*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0205P (6th Cir.)
File Name: 04a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

MARCO GARCIA-
ECHAVERRIA,
  *Defendant-Appellant.*

No. 03-3655

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 01-00779—James G. Carr, District Judge.

Argued: April 23, 2004

Decided and Filed: July 1, 2004

Before: MERRITT and MOORE, Circuit Judges;
    DUGGAN, District Judge.*

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** Jeffrey M. Gamso, GAMSO, HELMICK & HOOLAHAN, Toledo, Ohio, for Appellant. Thomas O. Secor, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Jeffrey M. Gamso, GAMSO, HELMICK & HOOLAHAN, Toledo, Ohio, for Appellant. Thomas O. Secor, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant, Marco Garcia-Echaverria ("Garcia-Echaverria"), appeals his conviction pursuant to a conditional guilty plea for "Unlawful Reentry by an Illegal Alien," in violation of 8 U.S.C. § 1326(b). On appeal, Garcia-Echaverria argues that his conviction for unlawful reentry should be vacated because (1) his initial removal was unlawful, because at the time he was removed, the Kentucky drug conviction for which he was removed was on direct appeal; (2) his initial removal violated due process because at the time he was removed, his petition for review of the Board of Immigration Appeals ("BIA") decision and his motion for a stay of removal were pending before the United States Court of Appeals for the Fifth Circuit, he had filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York ("S.D.N.Y."), which the S.D.N.Y. had transferred to the United States District Court for the Western District of Louisiana ("W.D. La."), and the S.D.N.Y. had issued a stay of removal until the W.D. La. took further action; and (3) his indictment should have been dismissed due to violations of § 3161(b) of the Speedy Trial Act and Federal Rule of Criminal Procedure 5(a) because by the time he was indicted,

he had been in detention for thirty-three days, and by the time he was first brought before a magistrate, he had been in detention for thirty-five days.

For the following reasons, we **AFFIRM** Garcia-Echaverria's conviction.

## I. BACKGROUND

In this appeal, Garcia-Echaverria challenges his conviction for unlawful reentry. On October 3, 2001, a grand jury returned a one-count indictment, charging Garcia-Echaverria with being an alien found in the United States on or about August 31, 2001, after having been deported for committing an "aggravated felony" and without obtaining permission to reenter from the Attorney General, in violation of 8 U.S.C. § 1326(b). After his motions to dismiss the indictment were denied, Garcia-Echaverria pleaded guilty to the charge of unlawful reentry, and the district court sentenced him to thirty-seven months of imprisonment.

Several of Garcia-Echaverria's arguments on appeal attack the legality of his prior removal. Garcia-Echaverria, a native and citizen of Mexico, entered the United States on or about January 1, 1980, and became a lawful permanent resident on or about January 26, 1990. On January 6, 1997, Garcia-Echaverria was convicted by the State of Kentucky pursuant to a guilty plea, entered on December 16, 1996, to the charge of "Trafficking Marijuana over 8 ounces, less than 5 pounds," in violation of K.R.S. 218A.1421(3). Joint Appendix ("J.A.") at 125-26. On January 10, 1997, the Kentucky Circuit Court sentenced Garcia-Echaverria to five years of imprisonment for his Kentucky drug conviction. Several months later, on May 7, 1997, Garcia-Echaverria filed a motion in the Kentucky Circuit Court, requesting taped copies of the court proceeding leading up to his Kentucky drug conviction, and indicating that the tapes would be used to seek post-judgment relief. Then, on July 16, 1997, Garcia-Echaverria wrote a pro-se letter to the Kentucky Circuit Court, indicating that he

wanted to appeal his conviction, or in the alternative, requesting shock probation. The Joint Appendix reflects that on March 29, 2000, the Kentucky Circuit Court entered an order overruling Garcia-Echaverria's "motion for appointment of counsel, motion for hearing and motion to set aside sentence."[1] J.A. at 168. Subsequently, Garcia-Echaverria filed a motion to reconsider the March 29, 2000 order, which was captioned as a "'BELATED APPEAL RCr 11.42 MOTION TO VACATE, SE[T] ASIDE, CORRECT SENTENCE OR SET FOR NEW TRIAL AND APPEAL' 'APPOINTMENT COUNSEL AND MOTION FOR HEARING.'" J.A. at 153. On April 18, 2000, the Kentucky Circuit Court overruled this motion to reconsider.

On May 30, 2000, Garcia-Echaverria filed a Notice of Appeal in the Kentucky Circuit Court, indicating that he sought to appeal the March 29, 2000 and April 18, 2000 orders. The Kentucky Court of Appeals's docket sheet also reflects that the appeal related to the March 29, 2000 and April 18, 2000 orders. The "General Case Information" section of the docket sheet, however, indicates that the document type is a "Matter of Right Appeal," and that the case type is a "Direct appeal - Criminal." J.A. at 114. On February 14, 2001, after Garcia-Echaverria had been removed, the Kentucky Court of Appeals dismissed the appeal upon its own motion. On August 14, 2002, the Clerk of the Court of Appeals for Kentucky wrote a letter to the U.S. Attorney's Office, expressing the opinion that the appeal docketed on May 30, 2000, "is a direct appeal from two judgments denying relief in a collateral attack on a judgment of conviction . . . not a direct appeal from a judgment of conviction." J.A. at 165.

On May 13, 1997, the Immigration and Naturalization Service ("INS") issued Garcia-Echaverria a Notice to Appear, charging that he was deportable due to his Kentucky drug

---

[1]This motion does not appear in the Joint Appendix.

conviction under two sections of the Immigration and Nationality Act ("INA") — § 237(a)(2)(A)(iii) (codified as 8 U.S.C. § 1227(a)(2)(A)(iii)) for being convicted of an "aggravated felony" and § 237(a)(2)(B)(i) (codified as 8 U.S.C. § 1227(a)(2)(B)(i)) for being convicted of controlled substance offense. On September 7, 1999, an Immigration Judge ("IJ") ordered Garcia-Echaverria removed from the United States. On July 20, 2000, the BIA dismissed Garcia-Echaverria's appeal, finding that a waiver of inadmissiblity pursuant to § 212(c) of the INA (originally codified as 8 U.S.C. § 1182(c), but *repealed by* the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 104 Pub. L. No. 104-208, § 304(b), 110 Stat. 3009 (1996)), was not available to him, and that he was statutorily ineligible for cancellation of removal pursuant to § 240A(a) of the INA (codified at 8 U.S.C. § 1229b).

Garcia-Echaverria was removed on either August 8 or 9, 2000, after he had made filings in the Fifth Circuit and the S.D.N.Y. On August 7, 2000, Garcia-Echaverria filed in the Fifth Circuit a petition for review of the BIA's decision and a motion for a stay of removal, which were docketed on August 10, 2000. After Garcia-Echaverria was removed, the Fifth Circuit declared moot the motion to stay removal and dismissed for lack of jurisdiction the petition for review. While he was held in Oakdale, Louisiana awaiting removal, Garcia-Echaverria sent a petition for a writ of habeas corpus to the S.D.N.Y.[2] On August 8, 2000, the S.D.N.Y. ordered the habeas petition to be filed and docketed, transferred the petition to the W.D. La., and stayed removal pending further action by the W.D. La. However, neither Garcia-Echaverria's habeas petition nor the S.D.N.Y.'s orders transferring the petition and granting the stay were entered on the S.D.N.Y.'s docket sheet until August 9, 2000. The W.D. La. did not

---

[2] According to the S.D.N.Y.'s order transferring Garcia-Echaverria's habeas petition and granting a stay of removal, the S.D.N.Y.'s pro-se office received the petition on July 12, 2000.

receive the transferred habeas petition until August 14, 2000, and dismissed the petition for non-payment of filing fees on November 1, 2000.

Garcia-Echaverria was found in the United States on August 31, 2001, when he was stopped for speeding by officers of the Ohio Highway Patrol at Fremont, Ohio. Officers of the Highway Patrol notified the INS, and Garcia-Echaverria was placed in Sandusky County jail pursuant to an INS detainer. On September 4, 2001, INS officer Matthew Hamulak interviewed Garcia-Echaverria after administering *Miranda* warnings. During this interview, Garcia-Echaverria admitted that he had previously been removed and that he had reentered without obtaining permission from the Attorney General. Garcia-Echaverria also consented to having his fingerprints taken at that time. On September 6, 2001, Hamulak requested from INS headquarters the records pertaining to Garcia-Echaverria's prior removal, which he received on September 22, 2001. On September 14, 2001, INS officer Neal Baker sent Garcia-Echaverria an "INS DETAINEE RESPONSE SHEET," informing Garcia-Echaverria that he would not receive an IJ hearing, that his prior order of deportation had been reinstated, and that he was "awaiting prosecution for Re-Entry after Deportation. No further contact will be made with you by the Detention & Deportation Office until that is resolved." J.A. at 89.

The district court had jurisdiction over Garcia-Echaverria's criminal prosecution pursuant to 18 U.S.C. § 3231 because Garcia-Echaverria was indicted for an offense against the laws of the United States. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo the denial of a motion to dismiss an indictment and a collateral attack upon a prior removal order underlying a conviction for unlawful reentry. *United States v. Martinez-Rocha*, 337 F.3d 566, 568-69 (6th Cir. 2003) (discussing the standard of review for a collateral challenge under 8 U.S.C. § 1326(d)). This court also reviews de novo the district court's application of the Speedy Trial Act and of the Federal Rules of Criminal Procedure. *United States v. Burke*, 345 F.3d 416, 421 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 1731 (2004); *United States v. Salgado*, 250 F.3d 438, 453 (6th Cir.), *cert. denied*, 534 U.S. 916 (2001).

### B. Finality of Kentucky Drug Conviction

First, Garcia-Echaverria argues that his conviction for unlawful reentry should be vacated because he was removed while his Kentucky drug conviction was on direct appeal. Garcia-Echaverria asserts that the Kentucky Court of Appeals's docket sheet reflects that a direct appeal was pending at the time he was removed, and that the district court improperly looked behind these judicial records to determine the finality of his conviction.

To support an order of deportation, a conviction must be final. *Pino v. Landon*, 349 U.S. 901 (1955). Finality requires the defendant to have exhausted or waived his rights to direct appeal. *Aguilera-Enriquez v. INS*, 516 F.2d 565, 570-71 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976). The defendant's exercise of post-conviction remedies does not, however, undermine the finality of his conviction. *Id*. The finality of a defendant's conviction must be determined from court records. *Id*. at 570.

Contrary to Garcia-Echaverria's assertions, *Aguilera-Enriquez* does not restrict courts to an examination of docket

sheets when determining the finality of a conviction. Rather *Aguilera-Enriquez* provides, "The Immigration authorities must look to judicial records to determine whether a person has been 'convicted' of a crime. They may not determine on their own an alien's guilt or innocence." *Id*. *Aguilera-Enriquez* prohibits immigration authorities from second guessing, in the context of deportation proceedings, the ascertainment of an alien's guilt, but it does not prohibit the district court from questioning, when determining finality, the designation given to a particular action on a state court's docket sheet.

In this case, the district court did not contravene the limitations imposed by *Aguilera-Enriquez* by examining various records from the Kentucky Circuit Court and the Kentucky Court of Appeals. The district court determined the finality of Garcia-Echaverria's conviction from court records and did not second guess the Kentucky Circuit Court's ascertainment of guilt. According to Kentucky Rule of Criminal Procedure ("RCr") 11.42, a motion to vacate, set aside, or correct sentence is a collateral attack and need normally to be filed within three years of final judgment. At the time Garcia-Echaverria was convicted, a direct appeal from a criminal conviction was required to have been filed within ten days of final judgment. *Commonwealth v. Opell*, 3 S.W.3d 747, 750 (Ky. Ct. App. 1999) (citing old RCr 12.04).[3] The Kentucky Circuit Court's March 29, 2000 order indicates that Garcia-Echaverria's initial motion was to set aside his sentence, the Kentucky Circuit Court's April 18, 2000 order disposes of a motion to reconsider that initial motion and cites to RCr 11.42,[4] and Garcia-Echaverria's time

---

[3] "RCr 12.04 was amended effective January 1, 1999, to allow 30 days for taking an appeal." *Commonwealth v. Opell*, 3 S.W.747, 750 n.2 (Ky. Ct. App. 1999).

[4] That Garcia-Echaverria may have requested a belated appeal in these motions does not affect the finality of his conviction.

for filing a direct appeal had expired in 1997. Therefore, the district court did not err by determining that the motions overruled on March 29, 2000 and April 18, 2000 were collateral attacks upon Garcia-Echaverria's conviction. On May 30, 2000, Garcia-Echaverria filed a Notice of Appeal in the Kentucky Circuit Court, specifying that he sought to appeal the March 29, 2000 and April 18, 2000 orders. The Notice of Appeal does not indicate that Garcia-Echaverria sought to appeal his judgment of conviction entered on January 6, 1997 or his sentence imposed on January 10, 1997. Additionally, the Kentucky Court of Appeals's docket sheet indicates that the appeal pertained to the March 29, 2000 and April 18, 2000 orders.

Garcia-Echaverria bases his entire argument that his Kentucky drug conviction was not final upon the fact that the "General Case Information" section of the Kentucky Court of Appeals's docket sheet refers to a "Matter of Right Appeal" and a "Direct appeal - Criminal." *Aguilera-Enriquez* does not support Garcia-Echaverria's argument that a docket sheet notation referring to a direct appeal requires the conclusion that his conviction was not final for removal purposes. The Kentucky court records as a whole indicate that the appeal pending when Garcia-Echaverria was removed pertained to collateral attacks upon his conviction. Therefore, Garcia-Echaverria's conviction was final for removal purposes.

## C. Due Process in Prior Removal

Next, Garcia-Echaverria argues that his conviction for unlawful reentry must be vacated because he was removed in violation of due process, as court proceedings pertaining to his removal were pending and an order staying his removal had been issued. In response, the government argues that Garcia-Echaverria received due process, in that he received a proper hearing before an IJ and an appeal to the BIA. The government points out that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of

1996 ("IIRIRA") strip courts of jurisdiction to review orders of deportation/removal[5] issued to aliens who have committed certain criminal offenses, and that the IIRIRA stripped courts of jurisdiction over claims arising from decisions by the Attorney General to execute removal orders. The government also recognizes, however, that the AEDPA and the IIRIRA did not strip courts of jurisdiction over habeas corpus petitions filed pursuant to 28 U.S.C. § 2241. The government argues that removing Garcia-Echaverria while his petition for review was pending before the Fifth Circuit did not deny him due process, as the Fifth Circuit would not have had jurisdiction over that petition. The government also contends that removing Garcia-Echaverria after the S.D.N.Y. had transferred Garcia-Echaverria's § 2241 petition to the W.D. La. and issued a stay of removal did not deny him due process, because those orders had not been entered into the court's docket at the time Garcia-Echaverria was removed, and therefore, were not yet effective.

### 1. Petition for Review and Motion for a Stay Pending Before the United States Court of Appeals for the Fifth Circuit

The Fifth Circuit's docket sheet indicates that Garcia-Echaverria's petition for review and motion for a stay of deportation were docketed on August 10, 2000. The Fifth Circuit's docket sheet further indicates that on August 11, 2000, the Fifth Circuit declared moot Garcia-Echaverria's motion for a stay (as Garcia-Echaverria had been removed on August 8 or 9, 2000) and on September 12, 2000, the Fifth

---

[5] The IIRIRA adopted "the term "removal,' which essentially eliminated a distinction that formerly existed between 'deportation' proceedings and 'exclusion proceedings.' Thus, a determination whether an alien is 'inadmissible' (i.e., cannot, or did not, enter the country lawfully), or 'deportable' (i.e., entered the country lawfully but is no longer entitled to stay), would be determined through 'removal' proceedings." *Balogun v. U. S. Att'y Gen.*, 304 F.3d 1303, 1306-07 (11th Cir. 2002) (citations omitted).

Circuit granted the Attorney General's motion to dismiss for lack of jurisdiction Garcia-Echaverria's petition for review.

Although we do not have the benefit of the Fifth Circuit's analysis,[6] we conclude that Garcia-Echaverria's removal after he had filed a petition for review but before the court ruled on that petition did not deprive Garcia-Echaverria of due process. Under the permanent provisions of the IIRIRA, serving a petition for review on an officer or employee of the INS does not give rise to an automatic stay of removal, although the court may issue a stay. 8 U.S.C. § 1252(b)(3)(B); *see also Bejjani v. INS*, 271 F.3d 670, 688-89 (6th Cir. 2001). Moreover, under the permanent provisions of the IIRIRA, an alien's removal while his petition for review is pending neither deprives the court of appeals of jurisdiction over that petition nor does it necessarily render moot the claims in that petition. *Bejjani*, 271 F.3d at 688-89; *see also Amanfi v. Ashcroft*, 328 F.3d 719, 725 n.1 (3d Cir. 2003).

In this case, Garcia-Echaverria was not removed in violation of an effective stay of removal issued by the Fifth Circuit, as Garcia-Echaverria's petition for review did not give rise to an automatic stay and the Fifth Circuit's docket sheet reflects that Garcia-Echaverria was removed before the court ruled upon his motion for a stay. It is true that Garcia-Echaverria's removal made it more difficult for him to pursue his petition for review before the Fifth Circuit; we have relied upon this fact when issuing stays of deportation/removal for aliens with petitions for review pending before this circuit. *Bejjani*, 271 F.3d at 688-89. However, Garcia-Echaverria's removal did not make it impossible for him to pursue his petition for review, for his removal did not deprive the Fifth

---

[6]Nothing in the Joint Appendix indicates the basis for the Fifth Circuit's dismissal for lack of jurisdiction of Garcia-Echaverria's petition for review. We have obtained the relevant order from the Fifth Circuit clerk's office, but the order does not state the court's reasoning.

Circuit of jurisdiction over that petition or render moot the claims in that petition. *Id.*

Moreover, when the Fifth Circuit later ruled on Garcia-Echaverria's petition for review, it had no choice but to dismiss that petition for lack of jurisdiction. Section 440(a)[7] of the AEDPA stripped courts of jurisdiction to review final orders of deportation against aliens who are subject to deportation for having committed certain criminal offenses, including "aggravated felonies."[8] AEDPA, Pub. L. No. 104-132, § 440(a), 110 Stat. 1214 (1996); *Figueroa-Rubio v. INS*, 108 F.3d 110, 111 (6th Cir. 1997). The AEDPA was enacted on April 24, 1996, and the jurisdiction-stripping provisions became effective on that date. *Figueroa-Rubio*, 108 F.3d at 111-12. The AEDPA did not, however, strip courts of jurisdiction over habeas corpus petitions filed pursuant to 28 U.S.C. § 2241. *INS v. St. Cyr*, 533 U.S. 289, 314 (2001). Section 306(a)(2) of the IIRIRA[9] further stripped courts of

---

[7]Section 440(a) of the AEDPA provided: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court." AEDPA, Pub. L. No. 104-132, § 440(a), 110 Stat. 1214 (1996).

[8]Prior to the enactment of the AEDPA and presently, the INA has included within the definition of "aggravated felony," "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." 8 U.S.C. § 1101(a)(43)(1995).

[9]Section 306(a)(2) of the IIRIRA provides: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) or 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii)." IIRIRA, Pub. L. No. 104-208, § 306(a)(2), 110 Stat. 3009 (1996). With some exceptions not relevant here, this jurisdiction-

jurisdiction to review final orders of removal against aliens who are subject to removal for having committed an even greater number of criminal offenses, still including "aggravated felonies." IIRIRA, Pub. L. No. 104-208, § 306(a)(2), 110 Stat. 3009 (1996). *St. Cyr*, 533 U.S. at 297; *Calcano-Martinez v. INS*, 533 U.S. 348, 351-52 (2001). The IIRIRA was enacted on September 30, 1996, and the pertinent jurisdiction-stripping provision, which was part of the permanent rules, became effective on April 1, 1997. The IIRIRA did not, however, strip courts of jurisdiction over habeas petitions filed pursuant to 28 U.S.C. § 2241. *St. Cyr*, 533 U.S. at 314.

Garcia-Echaverria's removal proceedings commenced no earlier than May 13, 1997, which was after the enactment of the AEDPA and after the permanent provisions of the IIRIRA had become effective. Therefore, at the time Garcia-Echaverria filed his petition for review in the Fifth Circuit, courts of appeals had been stripped of jurisdiction to review final orders of removal issued against aliens who are removable for having committed an "aggravated felony."[10]

---

stripping provision became effective on April 1, 1997, and applied to removal proceedings commencing on or after that date. *Id*. at § 309(a). This jurisdiction-stripping provision applied to Garcia-Echaverria's removal proceedings. Unlike some provisions of the IIRIRA, the jurisdiction-stripping provisions did not raise any retroactivity concerns. *Figueroa-Rubio*, 108 F.3d 110, 112 (6th Cir. 1997) (noting jurisdiction-stripping statutes do not affect substantive rights).

[10]The BIA decision indicates that removal proceedings were not "commenced" against Garcia-Echaverria until August 11, 1999, after the permanent provisions of the IIRIRA had become effective on April 1, 1997. It is true that removal proceedings are not "commenced" until a charging document is filed with the Immigration Court. *Asad v. Reno*, 242 F.3d 702, 705 (6th Cir. 2001). There is, however, nothing in the record to support the BIA's finding that charging documents were not filed in the Immigration Court until August 11, 1999. In any event, Garcia-Echaverria was first issued a Notice to Appear on May 13, 1997, and Garcia-Echaveria conceded in his § 2241 petition that his immigration

The Fifth Circuit, however, retained jurisdiction to determine its jurisdiction, including jurisdiction to determine the existence of the jurisdictional fact of whether Garcia-Echaverria had been convicted of a removable offense. *Flores-Garza v. INS*, 328 F.3d 797, 802-03 (5th Cir. 2003).[11] The Fifth Circuit had no choice but to conclude that Garcia-Echaverria had been convicted of a removable offense, and thus that it lacked jurisdiction over the petition for review. As discussed in *Garcia-Echaverria v. United States*, No. 03-3285, the Fifth Circuit would have inevitably found that Garcia-Echaverria had been convicted of an "aggravated felony," depriving it of jurisdiction over Garcia-Echaverria's petition for review.

### 2. Stay Issued by the United States District Court for the Southern District of New York

Despite the passage of the AEDPA and the IIRIRA, district courts retain jurisdiction over habeas corpus petitions filed pursuant to 28 U.S.C. § 2241. Absent special circumstances not present here, a petition for a writ of habeas corpus is properly filed only in a court that has personal jurisdiction over the alien's immediate custodian. *Roman v. Ashcroft*, 340 F.3d 314, 319-21 (6th Cir. 2003); *Charles v. Chandler*, 180

---

proceedings were not commenced prior to April 1, 1997; therefore, his removal proceedings are covered by the permanent provisions of the IIRIRA.

[11]Garcia-Echaverria was charged with being removable on two bases — for being convicted of an "aggravated felony" and for being convicted of a controlled substance offense. Garcia-Echaverria has only contested the BIA's determination that his Kentucky drug conviction constituted an "aggravated felony." Because the BIA also determined that Garcia-Echaverria was removable based upon his conviction of a controlled substance offense, the Fifth Circuit would have held that it lacked jurisdiction and dismissed the appeal, without determining whether Garcia-Echaverria's Kentucky drug conviction constituted an "aggravated felony." *Flores-Garza v. INS*, 328 F.3d 797, 802-03 (5th Cir. 2003).

F.3d 753, 756 (6th Cir. 1999).[12] Garcia-Echaverria was being held in Oakdale, Louisiana; therefore, his habeas petition was not properly filed in the S.D.N.Y. On August 8, 2000, the S.D.N.Y. transferred the petition to the W.D. La. and stayed Garcia-Echaverria's removal pending further action by the W.D. La. However, the S.D.N.Y. did not enter these actions into its docket until August 9, 2000. The government argues that Federal Rule of Civil Procedure 58 provides that a judgment is not effective until it is entered into the court's docket, and therefore, that the INS did not remove Garcia-Echaverria in violation of an effective stay.

The S.D.N.Y.'s docket sheet indicates that Garcia-Echaverria's petition for habeas corpus, the S.D.N.Y.'s order transferring that habeas corpus petition to the W.D. La., and the S.D.N.Y.'s order granting a stay of removal were not docketed until August 9, 2000. The fact that the stay had not been entered into the S.D.N.Y.'s docket until after Garcia-Echaverria was removed on August 8 or 9, 2000, alone, is not dispositive in this case. It is the practice in this circuit and at least at one point was the practice in the United States Court of Appeals for the Second Circuit for the clerk's office to provide telephonic notice to the government when a stay has been issued in order to avoid the situation that occurred in this case. *See, e.g.*, *Edwards v. INS*, 59 F.3d 5, 7 n.3 (2d Cir. 1995). Moreover, the Second Circuit has "rejected the idea that an undocketed order [is] a nullity," citing cases holding that undocketed oral and written orders are binding on the parties so long as the parties have actual notice of the orders. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 365 & n.1

---

[12]The Second Circuit has not yet expressly decided this issue in a published opinion. *See Henderson v. INS*, 157 F.3d 106, 122-29 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004 (1999) (holding that a habeas corpus petition is properly filed in a district court that has personal jurisdiction over the petitioner's immediate custodian, but declining to answer the question of whether an alien's habeas corpus petition is also properly filed in a district court that has personal jurisdiction over the Attorney General).

(2d Cir. 2003), *cert. denied*, 124 S. Ct. 1047 (2004). In this case, however, there is no evidence that the INS had actual or constructive notice at the time it removed Garcia-Echiverria that the S.D.N.Y. had issued a stay of removal. We conclude that the INS was not bound then by an order of which it had no actual or constructive notice; therefore, Garcia-Echaverria was not removed in violation of an effective stay.

### 3. Petition for Habeas Corpus Pending Before the United States District Court for the Western District of Louisiana

Garcia-Echaverria's removal after his petition for habeas corpus was transferred to the W.D. La. but before that court ruled on that petition did not deprive Garcia-Echaverria of due process. Under the permanent provisions of the IIRIRA, an alien's deportation while his petition for habeas corpus pursuant to § 2241 is pending neither deprives the court of jurisdiction over that petition nor does it necessarily render moot the claims in that petition. *Zalawadia v. Ashcroft*, __ F.3d __, No. 03-30115, 2004 WL 1115090, at *3-4 (5th Cir. June 4, 2004). It is true that Garcia-Echaverria's removal made it more difficult for him to pursue his petition for habeas corpus before the W.D. La., but it did not make it impossible for him to pursue that petition. We recognize that the result of our due process analysis is harsh, but it comports with the IIRIRA's clear goal of speeding up the removal process. Aliens may be able to mitigate the difficulties posed by removal prior to the conclusion of their court proceedings by securing adequate representation.

### D. Speedy Trial Act and Federal Rule of Criminal Procedure 5(a)

Finally, Garcia-Echaverria argues that his indictment should have been dismissed due to a violation of § 3161(b) of

the Speedy Trial Act[13]and a violation of Fed. R. Crim. P. 5(a),[14]because he was not indicted or initially brought before a magistrate until more than thirty days after his civil detention had ripened into a criminal arrest. To support his contention that he was being held for criminal prosecution, Garcia-Echaverria points out that on September 4, 2001, an INS agent "took [Garcia-Echaverria's] fingerprints, and took a statement from [Garcia-Echaverria] after providing him with *Miranda* warnings," Appellant's Br. at 16, that on September 14, 2001, an INS agent informed Garcia-Echaverria that he was being held for criminal prosecution, and that the INS did not immediately deport him.

Several circuits have held that § 3161(b) does not generally apply to aliens held in civil detention, although many circuits have indicated an exception to this general rule exists when there is evidence of collusion between immigration and criminal prosecution authorities demonstrating that the alien's civil detention is a mere ruse to avoid application of the

---

[13]18 U.S.C. § 3161(b) requires:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

The appropriate remedy for a violation of § 3161(b) is dismissal of the indictment. 18 U.S.C. § 3162.

[14]Fed. R. Crim. P. 5(a) provides:

(1) Appearance Upon an Arrest.

(A) A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise.

(B) A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise.

Speedy Trial Act. *See, e.g.*, *United States v. Dyer*, 325 F.3d 464, 468-70 (3d Cir.), *cert. denied*, 124 S. Ct. 457 (2003) (explaining the "ruse" exception, but declining to adopt it because the defendant would not have qualified for the exception); *United States v. Drummond*, 240 F.3d 1333, 1335-36 (11th Cir. 2001); *United States v. Garcia-Martinez*, 254 F.3d 16, 19-20 (1st Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597-99 (5th Cir.), *cert. denied*, 531 U.S. 983 (2000); *United States v. Grajales-Montoya*, 117 F.3d 356, 366-67 (8th Cir.) (explaining the "ruse" exception, but declining to adopt it because the defendant would not have qualified for the exception), *cert. denied*, 522 U.S. 1007 (1997); *United States v. Pena-Carrillo*, 46 F.3d 879, 883 (9th Cir.), *cert. denied*, 514 U.S. 1122 (1995). "Under th[is] ruse exception, a civil detention triggers the Speedy Trial Act's time limit when federal criminal officials collude with civil authorities to detain an individual pending criminal charges, such that the primary or exclusive purpose of civil detention is to hold the individual for future prosecution. . . . [T]he Speedy Trial Act's time limit is not triggered by the fact that the INS is conducting a reasonable investigation in order to decide whether the reentrant should be prosecuted or deported without prosecution." *Dyer*, 325 F.3d at 468-69.

Similarly, several circuits have held that Fed. R. Crim. P. 5(a) does not generally apply to aliens held in civil detention, absent evidence of collusion between immigration and prosecution authorities. *Id*. at 470; *United States v. Encarnacion*, 239 F.3d 395, 398-99 (1st Cir.), *cert. denied*, 532 U.S. 1073 (2001); *United States v. Perez-Perez*, 337 F.3d 990, 996-97 (8th Cir.), *cert. denied*, 124 S. Ct. 336 (2003); *United States v. Noel*, 231 F.3d 833, 837 (11th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001).

On August 31, 2001, Garcia-Echaverria was placed in Sandusky County Jail pursuant to an INS detainer. On September 4, 2001, INS Officer Hamulak interviewed Garcia-Echaverria regarding his prior removal and subsequent reentry. For purposes of this appeal, we will assume that

§ 3161(b) of the Speedy Trial Act applies to persons held in detention and awaiting removal, when there is evidence of collusion between deportation and prosecution authorities.[15] The events that Garcia-Echaverria points to as evidence that he was being held for criminal prosecution — giving him *Miranda* warnings, taking his fingerprints, and sending him a fax informing him that he was being held for prosecution — all occurred on or after September 4, 2001. Assuming without deciding that these events demonstrate collusion, Garcia-Echaverria was indicted on October 3, 2001, within thirty days of September 4, 2001. Any evidence of collusion does not retroactively convert Garcia-Echaverria's detention prior to September 4, 2001 into a criminal arrest.[16] Nor does the fact that the INS failed to remove Garcia-Echaverria on the same day that he was apprehended demonstrate that his detention prior to September 4, 2001 was a criminal arrest. Therefore, § 3161(b) of the Speedy Trial Act was not violated, and the district court properly denied Garcia-Echaverria's motion to dismiss his indictment on that basis.

While a finding of collusion between the prosecution and deportation authorities would indicate that Fed. R. Crim. P.

---

[15] Although in *United States v. Salgado*, 250 F.3d 438, 454 (6th Cir.), *cert. denied*, 534 U.S. 916 (2001), we held that the thirty-day rule contained in § 3161(b) does not begin to run until a charging document has been filed, we do not find the absence of a charging document dispositive in this case. We note that it may be appropriate to create an exception to *Salgado*'s holding — that the thirty-day rule does not begin to run until a charging document has been filed — for situations where there is evidence that collusion between deportation and prosecution authorities led to a delay in filing formal charges and a simultaneous period of prolonged detention. *See, e.g.*, *United States v. Drummond*, 240 F.3d 1333, 1335-36 (11th Cir. 2001). We need not announce such an exception in this case, as the delay was less than thirty days.

[16] Garcia-Echaverria was initially placed in detention on Friday, August 31, 2001, and was first interviewed by Hamulak on Tuesday, September 4, 2001, which due to the intervening Labor Day weekend was the first workday following Garcia-Echaverria's arrest.

5(a) was violated, Garcia-Echaverria would not be entitled to have his indictment dismissed on that basis.[17] Typically, the appropriate remedy for a violation of Fed. R. Crim. P. 5(a) is the suppression of involuntary statements and the fruits of such statements. *Mallory v. United States*, 354 U.S. 449, 453 (1957); *McNabb v. United States*, 318 U.S. 332, 341-47 (1943); *Dyer*, 325 F.3d at 470 n.2; *United States v. Barlow*, 693 F.2d 954, 958 (6th Cir. 1982), *cert. denied*, 461 U.S. 945 (1983); 1 Charles Alan Wright, *Federal Practice and Procedure: Criminal* §§ 72-73, 75 (3d ed. 1999). Garcia-Echaverria has not indicated what evidence should be suppressed as the result of any violation of Fed. R. Crim. P. 5(a). While suppression of evidence in some cases may ultimately lead to the reversal of a conviction, *see, e.g.*, *McNabb*, 318 U.S. at 347, Garcia-Echaverria could have been convicted of unlawful reentry absent any statements that he made while he was unlawfully detained. Therefore, even if we were to assume that Fed. R. Crim. P. 5(a) was violated, the district court properly denied Garcia-Echaverria's motion to dismiss his indictment on that basis.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Garcia-Echaverria's conviction.

---

[17] On appeal, Garcia-Echaverria has not explicitly argued that his detention was unlawful due to the fact that he was arrested without a warrant and not given a probable-cause determination within forty-eight hours as required by *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). It is not entirely clear to what extent the *McLaughlin* rule and Fed. R. Crim. P. 5(a) overlap. In this case, however, any violation of the *McLaughlin* rule would not require dismissal of the indictment. *United States v. Fullerton*, 187 F.3d 587, 590-92 (6th Cir. 1999) (suggesting that the proper remedy is either application of the exclusionary rule or a *Bivens* action), *cert. denied*, 528 U.S. 1127 (2000).