**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0895n.06

**No. 10-3563**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Aug 14, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ASHRAF ADEL AWAD, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before:        CLAY and SUTTON, Circuit Judges; and RICE, District Judge.[*]

RICE, District Judge.  Ashraf Adel Awad ("Awad"), is a Palestinian who was born in Kuwait and grew up in the United Arab Emirates ("UAE"), but is a citizen of Jordan.  He concedes that he is subject to removal to Jordan, but alleges that if he is returned there, he will be persecuted and tortured because of his family's ties to the Palestinian Liberation Organization ("PLO") and the Fatah movement.

Based on an adverse credibility determination, the Immigration Judge ("IJ") denied Awad's applications for withholding of removal and for protection under the United Nations Convention Against Torture ("CAT").  The Board of Immigration Appeals ("BIA") affirmed that decision.  Awad seeks review of the BIA's final order.  For the reasons set forth below, we deny his petition for review.

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Before Awad was born, his family fled from Jordan to the UAE, having been allegedly forced out of their native country because of their ties to the PLO and the Fatah movement. Although Awad has been to Jordan only once, in 1985, when he was 14 years old, he later obtained a Jordanian passport through his father. He is therefore treated as a Jordanian citizen for purposes of these immigration proceedings.

As a high school student in the UAE, Awad had limited involvement with the PLO and the Fatah movement. In 1988, he was allegedly given a PLO scholarship and went to Poland to study, where he served as a "media coordinator" on campus and educated others about the Palestinian conflict. After he returned to the UAE in 1993, he claims he no longer played any active role in the Fatah movement.

Awad entered the United States on February 21, 2001, on a non-immigrant student visa, to attend the University of Toledo, but he never enrolled there. Shortly after his arrival, he married a United States citizen and, in January of 2002, he applied to adjust his status to a lawful permanent resident. Those immigration proceedings were aborted when the marriage ended in divorce.[1]

In August of 2005, Awad received a Notice to Appear, alleging that he was subject to removal under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). On September 5, 2006, he was placed in removal proceedings. He conceded that he was subject to removal and that

---

[1]At the hearing, Awad could not remember his ex-wife's name. The IJ found that this raised the question of whether it was a sham marriage.

an asylum petition would be time-barred. He nevertheless pursued applications for withholding of removal and for relief under CAT.

A hearing on the merits of Awad's applications was held on May 22, 2008. At the hearing, Awad testified that the Jordanian intelligence service ("the GID") had persecuted and tortured several of his family members because of their active support of the Fatah movement and the PLO. Awad's father allegedly worked as a secret service agent for Fatah during the 1960s and 1970s, providing support to families of Fatah members who had been detained. Awad testified that, during that time, his father was detained by the GID on several occasions, once for as long as two years.

Awad also testified that when he and his parents traveled from the UAE to Jordan in 1985, his father was immediately detained by the GID at the airport. The next time Awad saw him, approximately ten days later, his father's back was bandaged, he was on crutches, and he had a brace on his neck. They returned to the UAE as soon as his father was well enough to travel. Awad estimated that they were in Jordan for approximately two weeks.

According to Awad, during the 1960s and 1970s, his uncle, Mohammad Musa Awwad, who served as an attorney for the Fatah movement in Jordan, was also detained and tortured by the GID on many occasions, and Awad's aunt was raped. Awad further testified that, in 1985, his older brother, Ibrahim, was detained by the GID for 12 days and suffered a severe head injury when he tried to enter Jordan from Syria. His brothers were allegedly involved with assisting Palestinian refugees in Yugoslavia and Poland, and his uncle, Ribhi Awad, allegedly served as an Ambassador of the PLO in Indonesia.

Awad admitted that he had never personally been detained or harmed by the GID. He nevertheless maintains that if he were returned to Jordan, he would immediately be targeted by the GID, and would be detained and tortured because of his family's political involvement with the PLO. According to Awad, the GID would think that he had useful information about the PLO, the Fatah movement, or about his family members.

Awad also offered the expert witness testimony of Ali Dakakni, an immigration consultant who works with Palestinian refugees in Canada. Dakakni testified that many of his clients are afraid that they will be mistreated if they return to Jordan. He opined that, even though Awad had not been active in the Fatah movement for many years, he would still be at risk if he returned to Jordan.

Following the hearing, the IJ issued an oral decision denying Awad's applications for withholding of removal and relief under the CAT. He found that Awad was simply not credible and that his hearing testimony differed from the claims in his written application in several important respects. Most significantly, on his written application, Awad stated that "[i]t is well known that I am active in support of the Fatah political movement." Yet, at the hearing, Awad testified that he ceased all political involvement in Fatah when he left Poland in 1993. The IJ also noted that on Awad's 2002 application to adjust his status to a lawful permanent resident, Awad did not include Fatah or the PLO on the list of organizations with which he had ever been involved. In addition, although Awad testified that his brother Ibrahim was tortured when attempting to cross the border from Syria to Jordan, his written application stated that this incident occurred while Ibrahim was traveling from the UAE to Syria.

The IJ further noted that even though Awad testified that he was in regular contact with his family members, he offered absolutely no evidence to corroborate his claims that several of them had been detained and tortured by the GID. In fact, the IJ noted that Awad offered no admissible evidence to support his claims that he or his family members had any ties whatsoever with the PLO or the Fatah movement.[2] Nor did Awad offer any evidence to corroborate his claim that he studied in Poland on a PLO scholarship or served as a media coordinator there.

Finally, the IJ found that Awad failed to demonstrate a pattern or practice of persecution or torture of any similarly situated individuals. None of the articles submitted by Awad and none of the country reports issued by the State Department indicated that members of the PLO or Fatah movement were being detained or tortured by the Jordanian government. The IJ gave very little weight to Dakakni's "expert" witness testimony, questioning his qualifications and the basis for his opinion, and noting that Dakakni was a personal friend of Awad's.

The IJ concluded that Awad failed to demonstrate a clear probability that he would be subject to persecution based on his membership in a particular social group upon his return to Jordan, and he failed to demonstrate that it was more likely than not that he would be tortured if removed to Jordan.

Awad filed a timely appeal, and moved the BIA to grant withholding of removal, or to remand to the immigration court for a more thorough review of his claim of future persecution in

---

[2]Because of the adverse credibility determination, the IJ declined to address the government's alternative argument that Awad was ineligible for withholding of removal because he did work for the PLO and Fatah at the time they were engaged in terrorist activities.

present-day Jordan. On April 9, 2010, the BIA affirmed and adopted the IJ's decision, finding no clear error in the adverse credibility determination, and noting that the IJ had "provided clear and cogent reasons for the finding which are supported by the record of proceedings, including material inconsistencies between the applicant's testimony and documentary submissions concerning his political activities, ambiguous and confusing testimony, and lack of documentary authenticity." The BIA also agreed that Awad had failed to produce reasonably available corroborating evidence to support the claimed persecution of family members and had failed to prove systematic persecution of persons similarly situated to himself.

## II. DISCUSSION

### A. Jurisdiction/Standard of Review

Pursuant to 8 U.S.C. § 1252(a)(1) and Federal Rule of Appellate Procedure 15, Awad has petitioned this Court for review of the BIA's final order of removal.

As an initial matter, we note that after this Court denied Awad's motion for a stay of removal, it appears that Awad was indeed removed to Jordan, on February 23, 2011. Nevertheless, "an alien's removal while his petition for review is pending neither deprives the court of appeals of jurisdiction over that petition nor does it necessarily render moot the claims in that petition." *United States v. Garcia-Echaverria*, 374 F.3d 440, 447 (6th Cir. 2004).

Because the BIA adopted the IJ's decision, but added a few brief comments, we review the two decisions in conjunction with each other. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010). Findings of fact, including adverse credibility determinations, are reviewed for

substantial evidence, and questions of law are reviewed de novo. *Amir v. Gonzales*, 467 F.3d 921, 925 (6th Cir. 2006); *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We will not reverse factual findings unless " the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original). We must defer to the agency's decision if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.*

## B.      Withholding of Removal

To qualify for withholding of removal under the INA, an applicant must demonstrate that it is more likely than not that, if returned to the proposed country of removal, his life or freedom would be threatened because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Dugboe v. Holder*, 644 F.3d 462, 471–72 (6th Cir. 2011). The applicant may satisfy this burden either by establishing past persecution, or by establishing a pattern or practice of persecution of persons similarly situated to him on account of one of the protected grounds. *See* 8 C.F.R. § 1208.16(b).

An applicant's testimony, if credible, may be sufficient to sustain this burden of proof without corroboration. *Id.* However, "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his] burden of proof." *Dorosh v. Ashcroft,* 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S-M-J,* 1997 WL 80984, 21 I. & N. Dec. 722, 724–26 (BIA 1997)).

Awad maintains that he has established a clear probability that he will be persecuted if forced to return to Jordan. He challenges the IJ's adverse credibility determination and maintains that the alleged inconsistencies in his own testimony are immaterial. Awad contends that he presented credible, detailed and persuasive testimony about the systematic past persecution of his family members by the Jordanian GID and about his own involvement with Fatah and the PLO. He further maintains that his fear of future persecution is corroborated by expert witness testimony and objective reports.

The government argues, however, that substantial evidence supports the IJ's adverse credibility determination, and nothing in the record compels the conclusion that Awad credibly established his eligibility for withholding of removal. We agree.

Under the REAL ID Act, which governs Awad's applications, credibility determinations are based on the "totality of the circumstances" and take into account "all relevant factors," including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011) (quoting 8 U.S.C. § 1158(b) (1)(B)(iii), and *El–Moussa v. Holder,* 569 F.3d 250, 256 (6th Cir. 2009)).

As the IJ noted, Awad's testimony was inconsistent in several respects with his written applications. Most importantly, Awad's applications for withholding of removal and protection under the CAT stated that he "is active in support of the Fatah political movement." He testified, however, that he ceased all involvement with the movement in 1993 when he left Poland. Moreover, his 2002 application for adjustment of status failed to mention any past or present memberships or affiliations with Fatah or the PLO. In addition, Awad's testimony that his brother Ibrahim was tortured en route from Syria to Jordan differed from the statement on his application that Ibrahim was detained when traveling from the UAE to Syria.

Awad's testimony was also internally inconsistent at times. At one point, he testified that his family was in Jordan for seventeen days, but he later said that it was for two weeks or less. Awad argues that this slight discrepancy is immaterial. Standing alone, that may be true. However, the IJ also noted that Awad also appeared to be confused about other circumstances surrounding this alleged trip to Jordan.

Moreover, Awad offered no corroborating statements from any family members concerning any of the detentions or torture allegedly endured at the hands of the GID. In fact, he offered no corroborating statements to support his claim that his family had deep ties to the PLO and the Fatah movement, and no corroborating statements concerning his studies in Poland on a PLO scholarship. The IJ found that, in light of the fact that Awad testified that he was in regular contact with his family members, these corroborating statements were reasonably available and should have been produced.

A determination regarding the availability of corroborating evidence cannot be reversed "unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). In this case, there is no basis for reversing the IJ's determination concerning the availability of such corroborating evidence. Considering the totality of the circumstances, the IJ's adverse credibility determination is supported by substantial evidence and will not be overturned.

The IJ and BIA did not err in concluding that Awad has failed to demonstrate a clear probability that, if returned to Jordan, his life or freedom would be threatened because of his family's ties to the PLO and the Fatah movement. We agree that Awad failed to establish past persecution.

Awad also failed to prove that the Jordanian government currently engages in a pattern or practice of persecution of persons similarly situated to him. As the IJ noted, none of the documentary evidence presented supports a finding that the Jordanian government is currently targeting persons whose families have ties to the PLO or the Fatah movement. The IJ noted that Ali Dakakni's "expert" opinion, that Awad was still at risk, appeared to be based on what he had been told by people seeking asylum in Canada and upon his independent internet investigation. Moreover, Dakakni was one of Awad's friends. The IJ found that Dakakni was not much of an expert, and that "his testimony certainly was not credible." Nothing in the record compels a conclusion to the contrary.

The agency's decision to deny Awad's application for withholding of removal is supported by reasonable, substantial, and probative evidence, when considering the record as a whole. We therefore deny Awad's petition for review.

## C.    Protection Under the CAT

The Convention Against Torture provides that no state may expel or return a person to another state where there are substantial grounds for believing that person would be in danger of being subjected to torture. To qualify for protection under CAT, Awad must show that it is more likely than not that he would be tortured if removed to Jordan. Again, his testimony, if credible, may be sufficient to sustain this burden without corroborating evidence. 8 C.F.R. § 1208.16(c)(2).

Where, as here, a CAT claim is based on the same grounds as a withholding of removal claim, an adverse credibility determination in connection with the application for withholding of removal is also fatal to the CAT claim. *Khozhaynova v. Holder*, 641 F.3d 187, 197 (6th Cir. 2011) ("Because Khozhaynova failed to satisfy the threshold showing of credibility for withholding of removal, she likewise failed to demonstrate entitlement to relief under the CAT."). We therefore find that Awad is not entitled to protection under the CAT, and deny his petition for review.

## III.    CONCLUSION

For the reasons set forth above, we **DENY** the petition for review of Awad's applications for withholding of removal and protection under the CAT, and **AFFIRM** the decision of the BIA.